ARTHUR E. JACOBS, Respondent, *v.* MONATON REALTY INVESTMENT CORPORATION, Appellant.

Business corporations — contract — validity and effect of certificates issued by realty investing corporation — action to recover amount paid upon such certificates before certificates are due under terms thereof — pleading — insufficiency of allegations that acts of such corporation were ultra vires.

1. A fact essential to a cause of action is not alleged when it is only to be inferred from other facts specifically averred which are not inconsistent with the opposite fact.

2. The defendant is a domestic business corporation and has its principal place of business in the city of New York. It is a stock corporation and is not incorporated under the Banking Law. Neither the time when, nor the purpose for which the defendant was organized, is alleged. It made an agreement with the plaintiff that in consideration of the payment of a certain sum each month during a period of ten years, it would, at the expiration of that period, pay a certain sum to the holder of the agreement or certificate, and in addition "such portion of the profits as the directors of the company may consider just and equitable." The certificate was made subject to certain "privileges and provisions" therein contained. Plaintiff paid the monthly sums as stipulated and then demanded repayment, which was refused by defendant, and this action was brought for the recovery of such payments before the certificate became due on the ground that defendant was not empowered to receive the moneys. *Held*, that the body of the certificates in substance or in form does not tend to show that the defendant did not borrow the moneys for a lawful purpose of its incorporation. It is to be presumed that the certificates are within the powers of the defendant, since when a corporation contract is not on its face necessarily beyond the scope of the power of the corporation, it will, in the absence of averment and proof to the contrary, be presumed to be valid. Hence the action cannot be maintained.

*Jacobs* v. *Monaton Realty Inv. Corpn.*, 160 App. Div. 449, reversed.

(Argued April 21, 1914; decided June 9, 1914.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 31, 1913, affirming a determination of the Appellate Term which affirmed an order of the

City Court of the city of New York granting a motion by plaintiff for judgment in his favor upon the pleadings and the judgment entered thereon.

The pleadings before this court were the complaint and the demurrer to it.

The facts set forth as the first cause of action are: The defendant is a domestic business corporation and has its principal place of business in the city of New York. It is not incorporated under the Banking Law (Laws of 1909, ch. 10) or the former Banking Law (Laws of 1892, ch. 689). About February 23, 1909, it made an agreement in writing with the plaintiff (a copy of which is attached to and made a part of the complaint), in material part as follows:

"UNITED STATES OF AMERICA
"MONATON REALTY
"INVESTING    (MONATON)    CORPORATION.
(R. I. C.)
"INCORPORATED                 STATE OF NEW YORK.

"This is to certify that, in consideration of the payment of One Hundred, seven and $\frac{36}{100}$ Dollars annually (or of the optional sum of $9.$\frac{20}{100}$ each month) in advance during the period of 10 years from the date hereof Monaton Realty Investing Corporation hereby promises to pay to Arthur Edward Jacobs or to the recorded owner hereof, at the expiration of said period, upon presentation and surrender of this Certificate to the Company at its head office in the City of New York the sum of Fifteen Hundred Dollars in Gold Coin of the United States of the present standard of weight and fineness, which sum includes interest on said payments at the rate of six per cent. per annum as herein provided, and in addition thereto such portion of the profits as the Directors of the Company may consider just and equitable. This Certificate is subject to the 'Privileges and Provisions' hereon endorsed which are hereby referred to and made part of the same."

4

The formal clause of execution by the corporate officers and the corporate seal immediately follow. Indorsed thereon are the words: "Privileges and Provisions. The payments on this Certificate being accepted by the Company for investment in business, not for deposit, the owner has the following Privileges of Surrender Before Maturity." (*A*) to apply at any time the payments with accrued interest in purchase of real estate, for sale by the company subject to its regular selling conditions; (*B*) to transfer at any time the certificate to another person, by indorsement and record thereof on the company's books; (*C*) to receive on the second or later anniversary a paid-up certificate payable at the maturity date of the original certificate, or to receive cash, according to a stated schedule, on sixty days' notice in writing to the company; (D) in the event of the owner's death his legal representatives may receive the total amount of the premiums paid with four per cent interest to the date of death in cash, or continue this certificate to maturity by complying with its conditions, "provided always, that no surrender, transfer or other privilege above shall apply while any installment remains due and unpaid. * * * Interest on this Certificate except as otherwise specified, will be computed on the net annual rate installments (considered as paid yearly in advance) at the rate of six per cent per annum, compounded and credited annually, thus making with the annual payments the face value of this Certificate at its maturity." Further indorsements provide as to the time, place and extension of the time of payment of the installments, the non-forfeitable nature of the certificate and the rights of the holder in case of default, the right of the corporation to accelerate the maturity of the certificate and finally as follows: "In addition to the face value of this Certificate at its maturity it shall be entitled to and the owner shall receive such portion of the profits of the Company as shall be apportioned thereto by the Directors thereof." Pursuant to said agreement the plaintiff has

paid to the defendant the sum of $377.20 in monthly payments of $9.20 each, beginning with February 23, 1909, and ending with June 23, 1912, repayment of which the defendant has refused. The second cause of action is based upon a certificate of identical tenor *mutatis-mutandus* under which the plaintiff had paid $190.03 in monthly payments of $6.13 within the period mentioned. The third cause of action was based upon a dissimilar certificate and will be considered independently. The action is for the recovery of the payments under the certificates.

*William D. Guthrie* and *J. Cowden Meyers* for appellant. The corporate obligations in question were lawfully issued by the defendant corporation for money borrowed. (*Sinton* v. *County of Carter*, 23 Fed. Rep. 535; 120 U. S. 517; *Munzinger* v. *United Press*, 52 App. Div. 338, 341; *Ghiglone* v. *Marsh*, 23 App. Div. 61, 65; *Curtis* v. *Leavitt*, 15 N. Y. 9; *Glennan* v. *R. T. & S. D. Co.*, 209 N. Y. 12; *Chapman* v. *Lynch*, 156 N. Y. 551; *Clark* v. *Dillon*, 97 N. Y. 370; *F. L. & T. Co.* v. *Clowes*, 3 N. Y. 470; *F. L. & L. Co.* v. *Curtis*, 7 N. Y. 466; *C. C. Bank* v. *Risley*, 19 N. Y. 369.) The defendant corporation was not carrying on the business of receiving deposits. (*Constant* v. *University of Rochester*, 133 N. Y. 640; *Mumford* v. *A. L. Ins. & T. Co.*, 4 N. Y. 463; *Nat. Bank* v. *W. C. Bank*, 5 Hun, 605; *Engel* v. *O'Malley*, 219 U. S. 128; *Law's Estate*, 144 Penn. St. 499; *State* v. *C. S. S. Bank*, 136 Iowa, 79; *N. Y. T. C. Co.* v. *Williams*, 102 App. Div. 1; 184 N. Y. 579; *Wells, Fargo & Co.* v. *N. P. Ry. Co.*, 23 Fed. Rep. 469; *Chapman* v. *Comstock*, 58 Hun, 325; 134 N. Y. 509; *Chapman* v. *Lynch*, 156 N. Y. 551.) The defendant was not carrying on the business of a mortgage, loan or investment corporation. (*City of New York* v. *N. Y. C. R. Co.*, 193 N. Y. 543; *Baxter* v. *York Realty Co.*, 128 App. Div. 79; 198 N. Y. 521; *People ex rel. Beaman* v. *Feitner*, 168 N. Y. 360; *East* v. *B. H. R. R. Co.*, 195 N. Y. 409;

*Wells, Fargo & Co.* v. *N. P. Ry. Co.*, 23 Fed. Rep. 469; *Chapman* v. *Comstock*, 58 Hun, 325; *B. C. Bank* v. *Codd*, 25 N. Y. 163.)

*Gustav Lange, Jr.*, for respondent. The defendant being a business corporation had no powers of a corporation covered by the Banking Law, and it was, therefore, an *ultra vires* act on its part to receive the moneys of the plaintiff under the agreements and promises set forth in the complaint. (Cons. Laws, ch. 4, § 2; Cons. Laws, ch. 23, §§ 10, 22; Cons. Laws, ch. 59, § 2; Cons. Laws, ch. 2, §§ 1, 2, 13, 32, 215, 216, 227, 228, 229, 238, 260, 261, 280, 281, 282, 283; *Chapman* v. *Lynch*, 156 N. Y. 551; *Irwin* v. *Curie*, 171 N. Y. 409; *Bath Gaslight Co.* v. *Claffy*, 151 N. Y. 24; *Vought* v. *Eastern B. & L. Assn.*, 172 N. Y. 508; *Tracy* v. *Talmage*, 14 N. Y. 162; *Oneida Bank* v. *Ontario Bank*, 21 N. Y. 490; *N. Y. S. L. & T. Co.* v. *Helmer*, 77 N. Y. 64; *Fifth Ave. Coach Co.* v. *City of New York*, 58 Misc. Rep. 401; 194 N. Y. 19; 221 U. S. 467; *People ex rel. Tiffany & Co.* v. *Campbell*, 144 N. Y. 166; *Davis* v. *Old Colony R. R. Co.*, 138 Mass. 258.) The business conducted by the defendant is practically that of a savings and loan association. (Cons. Laws, ch. 2, art. 6, §§ 215, 216, 227, 228, 229, 238.) The contract or agreement affected by the third cause of action is equally *ultra vires* and the plaintiff entitled to recover the money paid. (*Chapman* v. *Lynch*, 156 N. Y. 551.)

COLLIN, J. The judgment was rendered and sustained upon the ground that the defendant was not empowered to receive the moneys of the plaintiff and their recovery was authorized under the decisions of this court. (*Tracy* v. *Talmage*, 14 N. Y. 162; *Curtis* v. *Leavitt*, 15 N. Y. 9; *Sacketts Harbor Bank* v. *Codd*, 18 N. Y. 240; *De Groff* v. *American Linen Thread Co.*, 21 N. Y. 124; *Oneida Bank* v. *Ontario Bank*, 21 N. Y. 490; *Irwin* v. *Curie*, 171 N. Y. 409.) The primary inquiry is, do the allegations of the complaint, admitted as true, establish con-

clusively that the defendant surpassed its powers in receiving the moneys.

Neither the time when, nor the purpose for which the defendant was organized, is alleged. It may have been formed "for any lawful business purpose or purposes other than a moneyed corporation, or a corporation provided for by the banking, the insurance, the railroad and the transportation corporations laws, or an educational institution or corporation which may be incorporated as provided in the education law." It is a stock corporation. (Business Corporations Law, Laws 1909, ch. 12 [Cons. L. ch. 4], section 2.) Its lawful business purpose may have been the buying, developing or improving and selling of real estate, or mining, or manufacturing or another. It might not "by any implication or construction be deemed to possess the power of carrying on the business of discounting bills, notes or other evidences of debt, of receiving deposits, or buying and selling bills of exchange; or of issuing bills, notes or other evidences of debt for circulation as money." (General Corporation Law, Laws 1909, ch. 28 [Cons. L. ch. 23], section 22, as amended by L. 1911, ch. 771.) Its statutory powers were those given by the Business Corporations Law, the General Corporation Law and the Stock Corporation Law; and it did not possess and could not exercise "any corporate powers not given by law, or not necessary to the exercise of the power so given." (Idem, Laws 1909, ch. 28 [Cons. L. ch. 23], section 10.) It was empowered to borrow money and issue and dispose of its obligations for any amount so borrowed, for it is enacted (Stock Corp. Law, Laws 1909, ch. 61 [Cons. L. ch. 59], section 6): "In addition to the powers conferred by the general corporation law, every stock corporation shall have the power to borrow money and contract debts, when necessary for the transaction of its business, or for the exercise of its corporate rights, privileges or franchises, or for any other lawful purpose of its incorporation; and it

may issue and dispose of its obligations for any amount so borrowed, and may mortgage its property and franchises to secure the payment of such obligations, or of any debt contracted for said purposes." In case the defendant borrowed the moneys it received from the plaintiff for any lawful purpose of its incorporation, manifestly and beyond the need or reach of argument, it, in doing that, exercised its lawful powers only. The complaint does not specifically allege that the defendant did not or did borrow the moneys or state the use or purpose to which the moneys were applied. It contains no allegation in regard to the nature or denomination of the defendant's business. The facts in regard to those matters are alleged only through the contents of the certificate and the averment that the defendant is a domestic business corporation.

The body of each of the certificates under discussion, in substance or in form, does not tend to show that the defendant did not borrow the moneys for a lawful purpose of its incorporation. It in borrowing had the power to issue and dispose of its obligation for any amount so borrowed, and the certificate is the obligation of the defendant. The word "obligation" has many meanings and when used in a statute its significance must be gathered from and governed by the purpose and context of the enactment. In this statute (Stock Corp. Law, section 6) it embraces all instruments in writing, however informal, and with or without seal, whereby the borrowing corporation contracts with a lender for the repayment of the sum borrowed. To borrow is the reciprocal action with to lend, and the idea of a borrowing is not filled out unless there is in the transaction a promise or understanding that what is borrowed will be repaid or returned, with or without compensation for the use of it in the meantime. (*Kent* v. *Quicksilver Mining Co.,* 78 N. Y. 159; *Sinton* v. *County of Carter,* 23 Fed. Rep. 535; affd., 120 U. S. 517; *Munzinger* v. *United Press,* 52

App. Div. 338; *Ghiglione* v. *Marsh*, 23 App. Div. 61; *Thorn* v. *Hall*, 10 App. Div. 412; affd., 160 N. Y. 661.) The right to borrow money given by the statute is a power to create an indebtedness and procure for its payment funds from others to be paid at a future date, with the power to issue obligations for the payment of the funds procured or borrowed. In substance, the money is borrowed from the purchasers of the obligations. The body of the certificates is, in form, an obligation of that precise nature. The certificates were issued by the defendant. By the body of each the defendant promised to pay to the plaintiff, at the stated time, the sum paid to it by him and which is the consideration for the promise, with interest and, additionally, such portion of the profits as it may consider just. Thus much, at least, evidences a borrowing and lending for the corporate lawful uses and purposes, and the issuance and disposal of the obligation of the defendant to pay the sum borrowed with a compensation for its use. No provision or privilege indorsed upon the certificate is destructive of or inconsistent with the body of it. Within a lawful range, the defendant was at liberty to make the obligation attractive to the lender. In the privilege to its owner of having payment in real estate, there is not, obviously, *ultra vires* or inconsonance with the body of the certificate, and this conclusion is, with equal certainty, true of each of the provisions that the owner may have the certificate transferred upon the records of the defendant; that he may have a paid-up certificate, or an accelerated payment in cash according to a stated schedule on sixty days' notice in writing; that in case of his death his representatives might have "the total amount of the premiums paid with" interest or the continuance of the certificate or that the interest is to be compounded and credited annually. We cannot discern in those privileges, considered severally or connectedly, any stipulation or effect which bars or contradicts the con-

clusion that the defendant borrowed these moneys of the plaintiff for the lawful purpose of its incorporation and issued to the plaintiff the certificates as evidence of its indebtedness to him and its obligation for its payment, and, therefore, received them *intra vires* and rightfully. It is wholly immaterial that a moneyed, railroad or transportation corporation· is empowered to issue an identical or similar instrument. The issuance of a promissory note by the defendant does not evidence ·to any extent that it is engaged in a business *ultra vires* of it and lawful only to a corporation of the classes above mentioned authorized to issue its promissory note. No more do these certificates, by any reasonable and fair intendment, furnish any proof that the defendant did not receive these moneys as a borrower for an authorized use. The words of Judge GRAY may well be invoked here: "I know of no principle of law which, as to commercial transactions within their [corporations] chartered powers and involving the receipt or borrowing of, and the obligation to repay, moneys, denies the entire freedom to regulate them by such a contract as the parties are willing to enter into." (*People* v. *Binghamton Trust Co.*, 139 N. Y. 185, 189.) A fact essential to a cause of action is not alleged when it is only to be inferred from other facts specifically averred which are not inconsistent with the opposite fact. (*Clark* v. *Dillon*, 97 N. Y. 370.)

In the absence of averment we are to presume that the certificates are within the powers of the defendant. When a corporate contract is not on its face necessarily beyond the scope of the power of the corporation, it will, in the absence of averment and proof to the contrary, be presumed to be valid. (*Railway Co.* v. *McCarthy*, 96 U. S. 258; *Gaul* v. *Kiel & Arthe Co.*, 199 N. Y. 472.)

The facts alleged as constituting the third cause of action are unavailing for reasons already written. They differ from those we have considered in that the payments of plaintiff were under a certificate stipulating

that (a) the interest is payable semi-annually, (b) a share in the profits to be conclusively determined by the directors shall be given the owner, (c) the defendant reserved the right on or after five years from its date to terminate the certificate upon stated terms, (d) the owner may surrender the certificate after two years upon terms stated, and (e) the certificate may be applied in the purchase of real estate for sale by the defendant, or (f) transferred upon its records.

The order appealed should be reversed and the complaint dismissed, with costs in all the courts.

WILLARD BARTLETT, Ch. J., WERNER, HISCOCK and HOGAN, JJ., concur; CHASE and CUDDEBACK, JJ., dissent.

Order reversed, etc.